IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GULF SOUTH COMMUNICATIONS, INC., CLAY HOLLADAY, and BRYAN HOLLADAY, <br><br> Plaintiffs, <br><br> v. <br><br> WOOF INC. and BRYANT CORBITT, <br><br> Defendants. | CIV. ACT. NO. 1:21-cv-40-ECM <br> (WO) |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court are partial motions to dismiss filed by Defendant WOOF, Inc. ("WOOF") and Defendant Bryant Corbitt ("Corbitt")(collectively "the Defendants"). (Docs. 13 & 15).

On December 18, 2020, Plaintiffs Gulf South Communications, Clay Holladay, and Bryan Holladay (collectively "the Plaintiffs"), filed a complaint in the Circuit Court of Houston County, Alabama. The case was removed pursuant to 28 U.S.C. §§ 1441 and 1331, on the basis of federal-question jurisdiction. No motion to remand was filed. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

On February 5, 2021, the Plaintiffs filed an amended complaint which brings claims for violation of the federal Electronic Communications Privacy Act (count I), violation of the federal Computer Fraud and Abuse Act (count II), violation of the federal Defend Trade Secrets Act (count III), violation of the Alabama Trade Secrets Act (count IV), intentional interference with contract (count V), violation of the Alabama Digital Crime Act (count

VI), violation of the Alabama Identity Theft Act (count VII), criminal impersonation (count VIII), commercial misappropriation/invasion of privacy (count IX), conversion (count X), trespass to chattels (count XI), unjust enrichment (count XII), negligent or wanton supervision (count XIII), and injunctive relief (count XIV).  (Doc. 8).

WOOF's motion to dismiss seeks dismissal of counts I, II, V, VI, VIII—XII, and XIV, and Corbitt's motion seeks dismissal of counts I, II, V, VI, VIII—XII.

Upon consideration of the amended complaint, motions, and the briefs of the parties, and for the reasons that follow, the motions to dismiss are due to be GRANTED in part and DENIED in part.

## II.     LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 663 (alteration in original) (citation omitted).  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U. S. at 678.  Conclusory allegations that are merely "conceivable" and fail to

rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U. S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## III. FACTS

Gulf South operates WKMX radio. Clay Holladay is the President of Gulf South and Bryan Holladay is the station manager for WKMX. In June 2014, Gulf South entered into a license agreement with Creative Radio Services, LLC ("Creative"). Pursuant to this contract, Creative licensed to Gulf South the exclusive right for WKMX radio to use Creative's licensed preparation materials. (Doc. 8 ¶9). The Creative licensed preparation materials include unique daily content such as trending stories. At the time this license agreement was entered into, Corbitt was employed by Gulf South as an on-air radio personality on WKMX. (*Id.* ¶9).

In April 2018, Corbitt resigned his employment with Gulf South and went to work for WOOF, a competing radio station. The amended complaint alleges that without permission from Gulf South, Corbitt created and began using the email address wkmxradio@yahoo.com and registered that email address with Creative. Corbitt held himself out as Clay Holladay, the President of Gulf South. (*Id.* ¶¶ 17-19).

Corbitt accessed the Creative licensed preparation materials 876 times from April 26, 2018 through September 21, 2020. He is alleged to have obtained a competitive advantage for himself and WOOF in order to increase ratings and advertising revenue.

Corbitt's usual time slot on the air at WOOF is 7:00 p.m. to 12:00 a.m. The amended complaint alleges that he accessed the licensed preparation material at or around 1:00 a.m., "contemporaneously with it being posted or uploaded by Creative on its website." (*Id.* ¶25). Corbitt continues to be employed at WOOF.

## IV. DISCUSSION

WOOF seeks dismissal of ten of the fourteen claims brought by Gulf South, Clay Holladay, and Bryan Holladay. Corbitt seeks the dismissal of nine claims.

A. Count I

Count I asserts claims pursuant to both 18 U.S.C. § 2511 and 18 U.S.C. § 2701. The Plaintiffs allege that the Defendants intercepted a communication in violation of § 2511 and accessed the material on Creative's website in violation of § 2701.

WOOF seeks dismissal only of the claim for violation of § 2511 (doc. 14 at 2, n.2), which Corbitt joins (doc. 15). The Defendants move to dismiss this aspect of the claim in count I on the ground that the facts of the amended complaint are sufficient only to allege access, and not interception, because Corbitt is alleged to have obtained material from Creative's website, not to have intercepted a transmission from Creative.

The Plaintiffs respond that the amended complaint sufficiently alleges that Corbitt intercepted electronic communications because it alleges that he logged on at 1:00 a.m., contemporaneously with the material being transmitted by Creative to the website. The Plaintiffs' position is that it is premature to determine in the context of a motion to dismiss whether there was a contemporaneous interception.

"Interception" is defined by the statute as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).  Some courts have interpreted this provision to mean that there is an interception if information is received within a second of transmission.  *See, e.g., United States v. Szymuszkiewicz*, 622 F.3d 701, 706 (7th Cir. 2010).

The Eleventh Circuit has addressed the "interception" issue, albeit in a criminal case, in *United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003).  The court explained that the definition encompasses only a "contemporaneous interception—i.e., an acquisition during 'flight . . . .'" *Steiger,* 318 F.3d at 1048-49.  The court cited favorably analysis that "viewing a private website by way of the Internet without authorization did not constitute an interception of electronic communications in violation of the Wiretap Act because such unauthorized viewing merely gained access to stored electronic communications." *Id.* at 1050.  The court also cited to scholarly analysis describing "a narrow window during which an E-mail interception may occur—the seconds or milli-seconds before which a newly composed message is saved to any temporary location following a send command." *Id.*

*Steiger* has been read in a case in this district as adopting "a construction of 'interception' requiring that electronic communications must be acquired contemporaneously with their transmission." *Bruce v. McDonald*, 2014 WL 931522, at *6 (M.D. Ala. 2014).  The court explained that logging into and acquiring messages from another's email account does not necessarily happen contemporaneously with their transmission, but although the evidence had not been presented in that case, if a plaintiff could establish that a defendant "had actually acquired even one message

5

contemporaneously with its transmission," the plaintiff might be able to show interception. *Id.*

In this case, because the amended complaint alleges that Corbitt accessed information contemporaneously with it being posted or uploaded, (doc. 8 ¶25), the Court finds that it alleges enough to state a plausible claim for purposes of a motion to dismiss. Upon factual development on the question of whether Corbitt accessed the information within milli-seconds of it being transmitted, the transmission issue can again be raised by appropriate motion for summary judgment. The motions to dismiss are, therefore, due to be DENIED as to this claim.

B. Count II

The claim in count II of the amended complaint is a claim for violation of the Computer Fraud and Abuse Act ("CFAA"), which allows for recovery in a civil case if a plaintiff can show that the defendant acted (1) knowingly and with intent to defraud, and (2) accessed a protected computer without authorization, or exceeded authorized access and "by means of such conduct further[ed] the intended fraud and obtain[ed] anything of value" so that the "loss" aggregated is at least $5,000 in value. *See* 18 U.S.C. §§ 1030(g), 1030(a)(4), 1030(c)(4)(A)(i)(I). The CFAA defines a "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

The Defendants move to dismiss this claim on the basis that the Plaintiffs have not pleaded the type of harm contemplated by the statute because the Plaintiffs are third parties with no ownership interest in the computer at issue. The Defendants cite the court to a decision from another district court within this circuit which determined that "loss" does not include lost revenue from the possible misappropriation of information. *See Daughtery v. Atlanta Crane & Automated Handling, Inc.*, 2012 WL 13024455, *8 (N.D. Ala. 2012).

The Plaintiffs do not, however, argue that their loss was lost revenue. Instead, they have pleaded that when Gulf South learned that WOOF using Creative licensed preparation material, Gulf South contacted Creative who, through investigation, determined that Corbitt was accessing the Creative website. (Doc. 8 ¶27). The Plaintiffs further allege that "Gulf South has incurred in excess of $5,000 as a victim of Defendants' conduct, including attorneys' fees, investigation costs, and enforcement costs . . . ." (Doc. 8 ¶77). The Plaintiffs contend that the Defendants' interpretation of the statute is unreasonably restrictive and that the amended complaint alleges that Gulf South incurred costs in excess of $5,000.

Courts examining the issue of loss under the CFAA have determined that investigative expenses incurred "in fees paid to forensic experts to uncover the breadth of . . . unauthorized transfers" is a compensable loss. *See Frisco Med. Ctr., L.L.P. v. Bledsoe*, 147 F. Supp. 3d 646, 660 (E.D. Tex. 2015). This interpretation of loss has been applied in this district. *D&J Optical, Inc. v. Wallace*, 2015 WL 1474146, at *5 (M.D. Ala. 2015)("Plaintiff alleges that the defendants' unauthorized activity forced it to incur costs of more than $5000 in damage assessment and remedial measures. The court concludes

7

that the plaintiff's allegations are plausible and adequately state a claim for relief under the CFAA."); *see also Health First, Inc. v. Hynes*, 628 F. App'x 723, 723-34 (11th Cir. 2016)(affirming decision where the "the bulk of the damages were for 'investigative and compliance' expenses, including legal fees for in-house and outside counsel, that Health First incurred as a result of Hynes's unlawful activity.").

Because the amended complaint alleges in paragraph seventy-seven that Gulf South investigated the loss and incurred expenses from that investigation, this Court concludes that a plausible claim has been pleaded, and the motions to dismiss are due to be DENIED as to this claim.

C. Count VI

In count VI of the amended complaint, the Plaintiffs bring a claim for violation of the Alabama Digital Crime Act. The Defendants contend that the claim is due to be dismissed because ALA. CODE 13A-8-112 does not contain a private right of action. They urge this Court to disregard, as non-binding and distinguishable on their facts, district court decisions which have found that there is a right of civil action.

District court decisions have interpreted Alabama law to provide, "civil liability for acts which constitute a crime . . . 'if the acts complained of violate the legal rights of the plaintiff, constitute a breach of duty owed to the plaintiff, or constitute some cause of action for which relief may be granted.'" *Ages Grp., L.P. v. Raytheon Aircraft Co.*, 22 F. Supp. 2d 1310, 1320 (M.D. Ala. 1998)(quoting *Smitherman v. McCafferty*, 622 So. 2d 322 (Ala. 1993)). The district court decisions rely on decisions of the Alabama Supreme Court which stand for the proposition that "for every criminal violation that injures the person or

property of another, there is a concomitant civil remedy." *Lollar v. Poe*, 622 So. 2d 902, 904 (Ala. 1993).

The Defendants point out that *Lollar* and *Smitherman* were decided more than two decades ago, and involved different facts. However, "the highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940). Furthermore, the proposition the cases stand for is a broad one, not dependent upon the facts of the claims.

Applying Alabama case-law, another judge in this district found a plausible claim for violation of the Alabama Digital Crime Act. *D&J Optical, Inc.*, 2015 WL 1474146, at *8; *see also Sunil Gupta, M.D., LLC v. Franklin*, 2017 WL 5196392, at *9 (S.D. Ala. Nov. 9, 2017) (finding a plausible claim for relief under the Alabama Digital Crimes Act, "as the Complaint alleges violations of the legal rights of the Plaintiff."). This Court is persuaded by the non-binding cases applying binding Alabama law and finds that the motion to dismiss is due to be DENIED as to the Alabama Digital Crime Act claim.

D. Count VIII

The amended complaint brings a claim for criminal impersonation, pursuant to ALA. CODE §13A-9-18. The Defendants move to dismiss this claim, arguing that that statute does not provide for a civil action. As with the Alabama Digital Crime Act claim in count VI, this Court finds that the Plaintiffs have alleged actions which constitute a crime which

9

violated the rights of the Plaintiffs, and, therefore, the motion to dismiss is due to be DENIED. *See Lollar*, 622 So. 2d at 904.

E.   Counts V, IX, X, XI, and XII

Although the claims in counts V, IX, X, XI, and XII for intentional interference with contract, commercial misappropriation/invasion of privacy, conversion, trespass to chattels, and unjust enrichment, respectively, are different legal theories, the primary ground articulated by the Defendants for dismissal is the same; namely, that the claims are preempted by the Alabama Trade Secrets Act ("ATSA"). The Defendants contend that the ATSA preempts these common law claims because the alleged conduct is based on the same facts underlying the ATSA claim. *See* ALA. CODE § 8-27-6.  The Court will first address the scope of preemption under the ATSA, and then will turn to the arguments raised with respect to particular common law claims.

*1.   Scope of Preemption Under State Law*

The ATSA protects a trade secret from disclosure or unauthorized use by another, and a person is liable for misappropriation if:

> (1) That person discovered the trade secret by improper means; (2) That person's disclosure or use constitutes a breach of confidence reposed in that person by the other; (3) That person learned the trade secret from a third person, and knew or should have known that (i) the information was a trade secret and (ii) that the trade secret had been appropriated under circumstances which violate the provisions of (1) or (2), above; or (4) That person learned the information and knew or should have known that it was a trade secret and that its disclosure was made to that person by mistake.

ALA. CODE § 8–27–3.

10

The statutory section regarding the ATSA's effect on other law is as follows: "[t]hose provisions of this chapter that are inconsistent with the common law of trade secrets supersede the common law; otherwise, this chapter should be construed to be consistent with the common law of trade secrets." *Id.* § 8–27–6. The official comment to this section provides, "[t]he act is intended both to codify and to modify the common law of trade secrets in Alabama. Where the act codifies, pre-existing sources may shed light on the meaning of the statute. There is no intention, however, to supersede other areas of the law." *Id.* Comment, § 8–27–6.

In *Allied Supply Co. v. Brown*, 585 So. 2d 33, 37 (Ala. 1991), a claim for breach of fiduciary duty was brought based on a defendant's misappropriation of confidential documents. The Alabama Supreme Court reversed the trial court's ruling that the plaintiff could pursue both statutory and common law theories of recovery for this "misappropriation of 'trade secrets' or confidential documents." *Id.* The plaintiff was limited to the statutory claim. *Id.* The Court noted that committee's comments to the Act indicate that "the legislature intended for the Act to replace common law tort remedies for the misappropriation of trade secrets . . . ." *Id.*

The Plaintiffs argue that under *Allied Supply Co.,* the ATSA does not preempt any of their tort claims for intentional interference with contract, commercial misappropriation/invasion of privacy, conversion, trespass to chattels, and unjust enrichment, because those are not brought specifically as "misappropriation" claims, and the ATSA only preempts misappropriation claims. For this argument, they rely on *Acoustic Artistry, LLC v. Peavey Elecs. Corp.*, 2013 WL 12250381, at *8 (N.D Ala. 2013)(Kallon,

11

J.).  The judge who decided *Acoustic Artistry*, however, has since taken the opposite view of preemption by the ATSA.  *See Killough v. Monkress*, 2021 WL 1192990, at *8 (N.D. Ala. Mar. 30, 2021)(Kallon, J.).

*Allied Supply Co.*, the binding authority interpreting the statute, held that the ATSA preemption provision applied even though the claim in that case was for a breach of fiduciary duty, not a claim specifically brought as a "misappropriation of a trade secret" claim.  585 So. 2d at 37.  Consequently, decisions within each of the three federal district courts in Alabama applying *Allied Supply Co*. have determined that the Alabama Supreme Court established the principle that "any common law tort claim that, whatever its name, provides a theory of recovery for the misappropriation of a trade secret is preempted by ATSA."  *Arkema Inc. v. Emerson Process Mgmt., LLLP*, 413 F. Supp. 3d 1191, 1194 (S.D. Ala. 2019); *Madison Oslin, Inc. v. Interstate Res., Inc*., 2012 WL 4730877, *9 (N.D. Ala. 2012); *Bell Aerospace Serv., Inc. v. U.S. Aero Servs., Inc*., 690 F. Supp. 2d 1267, 1276-1277 (M.D. Ala. 2010).  The language of *Allied Supply* implies that the ATSA preempts not only common law claims "specifically alleging the misappropriation of trade secrets but also other causes of action based on the same underlying facts . . . ."  *Madison Oslin, Inc.*, 2012 WL 4730877, at *6.  For example, a misappropriation of a trade secret accomplished by a conversion is still a misappropriation of a trade secret and must be redressed under ATSA, not under the common law theory of conversion.  *See Arkema*, 413 F. Supp. 3d at 1194*; see also Southern Field Maint. & Fabrication LLC v. Killough,* 2019 WL 360515, at *5 (M.D. Ala. 2019); *Killough*, 2021 WL 1192990, at *8 & n.13.

Therefore, this Court is persuaded that the preemptive reach of the ATSA is greater than just common law "misappropriation" of trade secrets claims.

The Plaintiffs argue that even if claims other than a "misappropriation" claim can be preempted by the ATSA, they have alleged facts in support of their claims which remove their claims for invasion of privacy and interference with contract from the preemptive scope of the ATSA, because elements of those claims are not the same as the ATSA claim. Specifically, the Plaintiffs argue that the invasion of privacy claim they have brought is for the appropriation of a likeness for someone's benefit, therefore, it is not preempted as a misappropriation of a trade secret. The Plaintiffs' theory is that the Defendants have wrongfully appropriated the names and identities of Clay Holladay, Bryan Holladay, and the WKMX station letters licensed to Gulf South for the purpose of gaining an economic benefit. (Doc. 18 at 26). Similarly, they argue that the interference with contract claim is distinct from misappropriation of a trade secret because they have claimed that the Defendants interfered with the license agreement by preventing Gulf South from obtaining the benefit of exclusivity which it paid for under the contract with Creative. (Doc. 18 at 26).

As noted, district courts in this circuit have interpreted the ATSA and *Allied Supply* to mean that if a plaintiff pleads common law causes of action "based on the same underlying facts as those giving rise to their claim under the ATSA . . . such causes of action are preempted." *Madison Oslin*, 2012 WL 4730877, at *9. In a decision in another district, the court cited to decisions applying a state statute similar to that of Alabama. *See Parker v. Petrovics,* 2020 WL 3972761, at *11 (N.D. Ala. 2020) (citing *SDC v. Fin. Inc.*

13

*v. Bremer*, 2019 WL 4393543, *11 (M.D. Tenn. 2019) and *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 658 (E.D. Tenn. 2004)). Those courts apply a "same proof" standard. *Hauck Mfg. Co.,* 375 F. Supp. 2d at 658. Under that standard, which appears to just be another way of analyzing whether the claims arise from the "same underlying facts," "if proof of a non-[trade secrets act] claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it." *Id.*

This Court is persuaded that the scope of preemption under the ATSA extends to any common law claim which provides a theory of recovery arising from the same facts as a statutory claim for misappropriating a trade secret, even if the facts required to prove the common law claim are not identical to a trade secret claim. That is, merely because an intentional interference with contract claim or an invasion of privacy claim may require additional elements of proof, those claims are not removed from the scope of ATSA preemption. The issue is whether the tort claim is an attempt to recover for wrongful appropriation of the same commercially valuable item as the commercially valuable trade secret.[1] *Arkema*, 413 F. Supp. 3d at 1195; *see also Bell Aerospace Servs.,* 690 F. Supp. 2d

---

[1] Trade secret is defined as
    (1) Trade secret. A "trade secret" is information that
    a. Is used or intended for use in a trade or business;
    b. Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;
    c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;
    d. Cannot be readily ascertained or derived from publicly available information;
    e. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and

at 1277 (finding that Bell Aerospace may not pursue its breach-of-fiduciary-duty claim under a theory that is "essentially the same" as its ATSA claim).

The Plaintiffs also attempt to distinguish their claims from the ATSA claim by arguing that they have a protectible interest in the Creative licensed preparation material even if it is not a trade secret. There is some recognition in the case law that an item with value independent of the trade secret could support a separation claim, for example, of conversion. *See S. Field Maint. & Fabrication LLC,* 2019 WL 360515, at \*5 (addressing a claim involving a tangible object and pointing out that the "distinction drawn by some courts is whether the converted property has value independent of the value it accrues as a trade secret."). The amended complaint alleges, however, that the Creative license preparation material includes news, trending stories, comedy bits, artist soundbites, recorded callers. (Doc. 8 ¶11). The facts alleged, therefore, do not support that there is a misappropriation of an item which is alleged to have value separate from the trade secret. *Cf. Arkema*, 413 F. Supp. 3d at 1196 & n.4 (reasoning that it is "not easy to imagine" how the plaintiffs could contend that electronic files are their property without relying on the business information within the files). Accordingly, the Plaintiffs' common law claims are preempted because, as pleaded, the claims arise from interference with WOOF's right to the Creative licensed preparation material, and so they will succeed or fail depending on

---

    f. Has significant economic value.
ALA. CODE § 8-27-2.

proof that the Defendants improperly obtained information the Plaintiffs also contend is a trade secret.

The Plaintiffs advance an additional argument with respect to their unjust enrichment claim; namely, that it seeks an equitable remedy and, therefore, in the Plaintiffs' view, is not preempted. As the Defendants point out, in applying a Georgia statute which is similar to the ATSA, the Eleventh Circuit found that the unjust enrichment claim was preempted. *See Penalty Kick Management, Ltd. v. Coca Cola Company,* 318 F.3d 1284, 1297 (11th Cir. 2003). A district court in this circuit has reached the same conclusion under the ATSA. *See Madison Oslin, Inc.*, 2012 WL 4730877, at *9. This Court is persuaded, therefore, that the unjust enrichment claim is preempted by the ATSA, as are the other remedy claims.

2. Claims Pleaded in the Alternative

The Plaintiffs argue that even if claims for conversion and trespass to chattels would be preempted by the ASTA with proof of a trade secret, the trade secret proof may fail, so the Plaintiffs ought to be able to plead these claims in the alternative. (Doc. 18 at 29). They rely on the Eleventh Circuit's decision in *Penalty Kick* to support this argument, but there, the Eleventh Circuit did not hold that claims could be pleaded in the alternative under Georgia law. 318 F.3d at 1297. Instead, the court explained that an argument that the claims arising out of facts that were not a trade secret did not apply in that case, because the facts rose to the level of a trade secret. *Id.*

The ATSA "is modeled after and closely parallels the Uniform Trade Secrets Act." *Parker,* 2020 WL 3972761, at *11 & n.9. "[D]etermining whether the Uniform Trade

Secrets Act (which gave the ATSA life) preempts common law causes of action is not dependent on whether the 'misappropriated information' constitutes a trade secret." *Id.* at *12. Allowing a claim to proceed when the ATSA claim failed would defeat the purpose of the ATSA to supersede common law inconsistent with the statute. *Id.* at *11. Courts reaching this conclusion reason that a plaintiff cannot use a general tort claim to revive a claim which would not be cognizable under the trade secret statute. *Id.* at *12 (quotation and citation omitted). Therefore, it "is a legal *non sequitur* to suggest general tort causes may be employed to protect legal rights which otherwise do not exist. . . . Moreover, such an approach would be wholly inconsistent with the . . . . goals of promoting uniformity and predictability . . . ." *Id.* (quotation and citation omitted).

This Court is persuaded that if the ATSA does not provide a remedy because the information at issue does not rise to the level of a trade secret, then the preemptive scope of the ATSA, which displaces common law inconsistent with the ATSA, ALA. CODE § 8–27–6, will not allow a conversion or trespass to chattels claim arising from the same facts. Accordingly, those claims cannot be pleaded in the alternative.

In short, the motion to dismiss is due to be GRANTED as to the claims in counts V, IX, X, XI, and XII because they are preempted by the ATSA.

F.  Count XIV

Defendant WOOF seeks dismissal of this count on the ground that injunctive relief cannot be provided by WOOF because the amended complaint alleges that Corbitt engaged in the wrongful acts as an individual, and WOOF is not engaged in any ongoing conduct which could be enjoined.

17

The Plaintiffs respond that WOOF has not moved to dismiss several claims and other claims are also due to proceed, so it would be premature to dismiss a claim for injunctive relief.

The amended complaint alleges that Corbitt is an employee of WOOF and that the actions he took were while acting as an agent and employee of WOOF. (Doc. 8 ¶20). The amended complaint also alleges that the Defendants continue to own or have access to the wkmxradio@yahoo.com email address and have the ability to continue holding themselves out as representatives of WKMX. (*Id*. ¶34). Based on these allegations, and the fact that there are claims proceeding for which the Plaintiffs may ultimately receive relief, the Court agrees that it would be premature to dismiss the request for injunctive relief at this time. The motion to dismiss is due to be DENIED as to the request for injunctive relief.

## V.    CONCLUSION

For the reasons discussed, it is ORDERED that the motions to dismiss (docs. 13 & 15) are GRANTED in part and DENIED in part as follows:

1. The motions to dismiss are GRANTED as to counts V, IX, X, XI, and XII and of the amended complaint and those claims are dismissed as against both Defendants.

2. The motions to dismiss are DENIED in all other respects.

Done this 11th day of June, 2021.

    /s/ Emily C. Marks  
    EMILY C. MARKS  
    CHIEF UNITED STATES DISTRICT JUDGE